[No. AO21900. First Dist., Div. Two. Feb. 16, 1984.]

JOSEPH L. BLAKEY et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
FIBREBOARD CORPORATION, Real Party in Interest.

[No. AO21902. First Dist., Div. Two. Feb. 16, 1984.]

EDDIE DANIELS et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
FIBREBOARD CORPORATION, Real Party in Interest.

**COUNSEL**

Karen Kahn and Steven Kazan for Petitioners.

No appearance for Respondent.

Robert S. Daggett and Brobeck, Phleger & Harrison for Real Party in Interest.

## OPINION

**SMITH, J.**—By this petition for writ of mandate Joseph Blakey et al. and Eddie Daniels et al., former employees of Fibreboard Corporation, seek to compel respondent superior court to set aside the orders sustaining without leave to amend the demurrers of real party in interest Fibreboard Corporation.

Petitioners filed their original complaints in 1979 (Blakey et al.) and 1980 (Daniels et al.) against Johns-Mansville Corporation and other asbestos producers. Each complaint alleged that each plaintiff had been exposed to asbestos during employment with Fibreboard and suffered from asbestos-related disabilities as a result of said exposure. However, Fibreboard was *not* named as a defendant. More than a year later, in some cases almost two years later, plaintiffs served Fibreboard as a Doe defendant pursuant to Code of Civil Procedure section 474.

In April 1982, Fibreboard demurred to each complaint upon grounds that (1) the actions were for illness and disability caused by exposure to asbestos, (2) each plaintiff's knowledge that his exposure to asbestos occurred during employment with Fibreboard was explicitly alleged in the original complaint, (3) each plaintiff therefore knew Fibreboard's identity when his original complaint was filed, (4) the applicable period of limitation had commenced to run on claims against Fibreboard, at the latest, when the original complaints were filed in 1979 and 1980, and (5) the governing period of limitation in each case was the one year provided in either Code of Civil Procedure section 340, subdivision (3) or section 340.2, and each plaintiff's action was therefore barred by limitations prior to any attempted commencement of an action against Fibreboard by service on it. The court below sustained the demurrers, but with leave to amend.

In May 1982, plaintiffs filed amended complaints. Their amended pleadings (1) retained the original allegations of asbestos-caused illness and disability, (2) added new allegations that each plaintiff "was impaired in his ability to pursue his normal or any gainful occupation for certain periods" and (a) alleged further, in the case of certain plaintiffs, that "plaintiff has not yet become disabled within the meaning of section 340.2 of the Code of Civil Procedure," or (b) alleged, in the case of other plaintiffs, that the plaintiffs "became disabled within the meaning of section 340.2 of the Code of Civil Procedure less than a year before the filing of the amended complaints."

Fibreboard again demurred on limitations grounds to each of the complaints so amended. Plaintiffs contended that their amended complaints suc-

cessfully stated causes of action against Fibreboard which were timely "within the meaning of" section 340.2.

In February and March 1983, respondent court sustained Fibreboard's demurrers to the amended complaints without leave to amend as to "those causes of action governed by a one-year statute of limitations." Plaintiffs were left with only two causes of action against Fibreboard, for fraud and conspiracy.

The instant petitions were then filed with this court (Blakey et al. and Daniels et al.), raising identical contentions. After we denied these petitions, our Supreme Court granted petitioners' request for hearing and retransferred the matter to this court with directions to issue an alternative writ.[1]

No case has yet construed Code of Civil Procedure section 340.2. That section provides in pertinent part as follows (Stats. 1979, ch. 513, § 1, p. 1689):

"(a) In any civil action for injury or illness based upon exposure to asbestos, the time for the commencement of the action shall be the later of the following: [¶] (1) Within one year after the date the plaintiff first suffered disability. [¶] (2) Within one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have known, that such disability was caused or contributed to by such exposure.

"(b) 'Disability' as used in subdivision (a) means the loss of time from work as a result of such exposure which precludes the performance of the employee's regular occupation."

Section 2 of chapter 513 provides: "The provisions of this act shall apply to those causes of action which accrued prior to the change in the law made by this act and have not otherwise been extinguished by operation of law."

Prior to the enactment of section 340.2, causes of action such as those involved here were governed by the one-year statute of limitations for neg-

---

[1]Fibreboard asserts for the first time in its return that all legal theories advanced by petitioners, including their causes of action for fraud and conspiracy, are statute of limitations barred, and therefore, petitioners' sole remedy is by appeals after entry of judgments. Respondent court specifically did *not* sustain demurrers to petitioners' fraud and conspiracy claims, leaving those claims pending, and consideration of the petitions is proper in the interests of judicial economy. (*Coulter* v. *Superior Court* (1978) 21 Cal.3d 144, 148 [145 Cal.Rptr. 534, 577 P.2d 669].)

ligence or strict liability claims set forth in Code of Civil Procedure section 340, subdivision (3), and the limitations period commenced at the time of the wrongful act. To ameliorate the harsh application of the one-year statute in cases involving latent occupational diseases courts began to apply a "discovery rule," holding that the statute did not begin to run until the plaintiff discovered or should have discovered his disease.[2] Thus, negligence and strict liability claims for asbestos-caused injury were held to have accrued for purposes of section 340, subdivision (3) when the plaintiff knew or should have discovered "that he was suffering from a disease that had caused or was likely to cause him injury for which relief could be sought at law." (*Velasquez* v. *Fibreboard Paper Products Corp.* (1979) 97 Cal.App.3d 881, 887-888 [159 Cal.Rptr. 113].)

The Legislature, anticipating the concerns expressed in *Velasquez* with respect to the time for commencement of actions for asbestos-related injuries, enacted Senate Bill No. 564, adding section 340.2 to the Code of Civil Procedure. In his letter to then-Governor Brown, Senator Marks, the author of the bill, discussed its purpose: "The purpose of S.B. 564 is to relieve victims of asbestos-related diseases from a potentially harsh application of the statute of limitations which was designed not for disease claims but for victims of traumatic injury. [¶] Under existing law, the statute of limitations for any action based on injury or death of a person caused by the wrongful act or neglect of another is one year from the date of the injury or death. It is important to know that the most serious of asbestos-related diseases often take from 15 to 35 years to develop. [¶] My bill provides that an action for injury or illness based upon exposure to asbestos is to be commenced within one year after the date the plaintiff first suffered disability therefrom and either knew or should have known such disability was caused by such exposure."

The Department of Industrial Relations similarly analyzed the purpose of the bill: "In cases involving injury, illness or death based upon exposure to asbestos, present definition of disability sometimes permits the time limit to start running prematurely against the plaintiff. There have been cases in which the courts have interpreted disability to be merely the providing of medical treatment; or an impairment which exists but does not limit the employee's ability to continue working. [¶] In the case of the latent occupational disease, such as asbestosis, the actual inability to work may not manifest itself until sometime later. Therefore the plaintiff would be precluded from receiving benefits because the definition of disability in the

---

[2]Note, *Issues in Asbestos Litigation* (1983) 34 Hastings L.J. 871, 881-882.

present law is not consistent with the disease itself, and its latent characteristics.''

Section 340.2 in effect codified the ''discovery rule'' enunciated in *Velasquez* with one significant difference. Section 340.2 provides that the statute never commences to run until the plaintiff suffers a ''disability''. Disability as defined in section 340.2 means the loss of time from work as a result of such exposure which precludes the performance of the employee's regular occupation.

Petitioners' complaints can be deemed timely filed only if the provisions of section 340.2 are applicable.[3] Under section 340.2, the statute of limitations commences to run at the later of the following times: 1) Within one year after the date the plaintiff first suffered a disability or 2) within one year after the date the plaintiff knew or should have known that such disability was caused or contributed to by exposure to asbestos.

At the time section 340.2 became effective (Jan. 1, 1980), plaintiffs' claims had not been adjudicated or extinguished by law. Since section 2 of chapter 513 provides that provisions of the act apply to causes of action which accrued prior to the change in the law made by the act and which have not otherwise been extinguished by operation of law, and plaintiffs' actions were still pending, their causes of action become entitled to the protection of this remedial statute. (See *City of Los Angeles* v. *Superior Court* (1977) 73 Cal.App.3d 509 [142 Cal.Rptr. 292].)

Each petitioner in his original complaint alleged that he ''was unable to follow his normal or any gainful occupation for certain periods after the date of said events, and plaintiff will remain disabled for an indefinite future time; plaintiff does not now know the value of the employment which has been and may be lost to him in the future, and requests leave to amend this complaint to insert the reasonable value thereof when such is determined.'' Petitioners' amended complaints alleged that disabilities ''within the

---

[3]Fibreboard's identity and status as an asbestos employer was alleged in each original complaint. Fibreboard was thus not a fictitious defendant and service on Fibreboard as a purported DOE defendant more than a year after the filing of the complaints didn't bring the causes of action within the tolling provisions of Code of Civil Procedure section 474. (*Dover* v. *Sadowinski* (1983) 147 Cal.App.3d 113 [194 Cal.Rptr. 866].) Thus under the prior statute (§ 340, subd. (3)) as interpreted in *Velasquez, supra,* 97 Cal.App.3d at pages 887-888, the plaintiffs had failed to sue Fibreboard, whose identity was known, within one year after discovery of asbestos-caused injury. Their amendments to the complaints would therefore be unavailing and the demurrers properly sustained under the prior statute. Petitioners conceded this point at oral argument.

meaning of" section 340.2 had either occurred less than a year before the filing of the amended complaints or had yet to occur.

Fibreboard contends that petitioners alleged asbestos-caused illness and disability at the outset; that their amended complaints failed to allege any fact showing a disability new or different from the disability originally alleged; and that their complaints are untimely even under section 340.2. Upon initial examination this contention seems persuasive. However, the definition of "disability" in section 340.2 gave a specific meaning to what had been a generic term. ■ Under this state's liberal rules of pleading, the right of a party to amend to correct inadvertent misstatements of facts or erroneous allegations of terms cannot be denied. As the court in *Freidberg* v. *Freidberg* (1970) 9 Cal.App.3d 754, 761 [88 Cal.Rptr. 451] observed: " 'Rules of pleading are conveniences to promote justice and not to impede or warp it. We do not question the rule that all allegations of fact in a verified complaint, which are subsequently omitted or contradicted, are still binding on the complainant. The rule is valid and useful, but it does not exist in a vacuum and cannot be mechanically applied. It is a good rule to defeat abuses of privilege to amend and to discourage sham and untruthful pleadings. It is not a rule, however, which is intended to prevent honest complainants from correcting erroneous allegations of generic terms which may have legal implications but which are also loosely used by laymen or to prevent correction of ambiguous statements of fact [Citation.]' " Nothing in the record before us demonstrates sham on the part of plaintiffs.

■ It may seem somewhat anomalous that the statute of limitations with respect to complainants who *actually know* that they have sustained injury or illness as a result of asbestos exposure never commences to run until the occurrence of "disability" within the meaning of section 340.2, regardless of when knowledge of the injury or illness was acquired. That is the effect, however, of the statutory scheme enacted by the Legislature. If the Legislature believes that the law should be otherwise, it may change it by statutory amendment. Until and unless that occurs, it is the function of this court to apply the statute as written. (Cf. *Williams* v. *Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599, 609-611 [88 Cal.Rptr. 297, 440 P.2d 497] (conc. opn. of Burke, J.).)

Since the period of limitation set forth in section 340.2 commences to run only when plaintiffs allege they have suffered a disability as therein defined, plaintiffs' amended complaints were not barred on their face by the statute of limitations and respondent court improperly sustained Fibreboard's demurrers. (See *Valvo* v. *University of Southern California* (1977) 67 Cal.App.3d 887 [136 Cal.Rptr. 865].)

## DISPOSITION

A peremptory writ of mandate shall issue directing respondent court to vacate its order sustaining the demurrers without leave to amend and issue a new and different order overruling the demurrers.

Kline, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied March 16, 1984, and the petition of real party in interest for a hearing by the Supreme Court was denied April 26, 1984. Bird, C. J., did not participate therein.